# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DELAWARE STATE SPORTSMEN'S ASSOCIATION, INC; BRIDGEVILLE RIFLE & PISTOL CLUB, LTD.; DELAWARE RIFLE AND PISTOL CLUB; DELAWARE ASSOCIATION OF FEDERAL FIREARMS LICENSEES; MADONNA M. NEDZA; CECIL CURTIS CLEMENTS; JAMES E. HOSFELT, JR; BRUCE C. SMITH; VICKIE LYNN PRICKETT; and FRANK M. NEDZA, | ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 1:22-cv-00951-RGA |
| DELAWARE DEPARTMENT OF SAFETY AND HOMELAND SECURITY; NATHANIAL MCQUEEN JR. in his official capacity as Cabinet Secretary, Delaware Department of Safety and Homeland Security; and COL. MELISSA ZEBLEY in her official capacity as superintendent of the Delaware State Police, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| GABRIEL GRAY; WILLIAM TAYLOR; DJJAMS LLC; FIREARMS POLICY COALITION, INC. and SECOND AMENDMENT FOUNDATION, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | C.A. No. 1:22-cv-01500-MN |
| KATHY JENNINGS, Attorney General of Delaware, | ) ) ) | |
| Defendant. | ) ) | |

**OPENING BRIEF IN SUPPORT OF**
**DEFENDANTS' MOTION TO CONSOLIDATE**

| ROSS ARONSTAM & MORITZ LLP | STATE OF DELAWARE DEPARTMENT OF JUSTICE |
|---|---|
| David E. Ross (#5228)<br>Bradley R. Aronstam (#5129)<br>Garrett B. Moritz (#5646)<br>1313 North Market Street, Suite 1001<br>Wilmington, DE 19801<br>(302) 576-1600<br>dross@ramllp.com<br>baronstam@ramllp.com<br>gmoritz@ramllp.com | Kenneth L. Wan (#5667)<br>Caneel Radinson-Blasucci (#6574)<br>Deputy Attorneys General<br>Carvel State Office Building<br>820 N. French Street, 6th Floor<br>Wilmington, DE 19801<br>(302) 577-8400<br>kenneth.wan@delaware.gov<br>caneel.radinson-blasucci@delaware.gov |

*Attorneys for Defendants*

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

NATURE AND STAGE OF THE PROCEEDINGS ................................................................ 2

      A. The DSSA Case ............................................................................................................ 2

      B. The Gray Case............................................................................................................... 2

STATEMENT OF FACTS .......................................................................................................... 3

ARGUMENT ................................................................................................................................ 7

I. THE DSSA AND GRAY CASES SHOULD BE CONSOLIDATED .................................. 7

CONCLUSION........................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Diabetes Care, Inc. v. Dexcom, Inc.*,
  2007 WL 2892707 (D. Del. Sept. 30, 2007) ................................................................................7

*Eastman Chem. Co. v. AlphaPet Inc.*,
  2011 WL 7121180 (D. Del. Dec. 29, 2011) ................................................................................9

*Leonard v. Stemtech Int'l, Inc.*,
  2012 WL 3655512 (D. Del. Aug. 24, 2012) ........................................................................7, 8, 9

*Myers v. New Castle Cnty.*,
  2013 WL 3853181 (D. Del. July 24, 2013) ..............................................................................7, 8

*New York State Rifle and Pistol Association v. Bruen*,
  142 S. Ct. 2111 (2022) ................................................................................................................8

*Syngenta Seeds, Inc. v. Monsanto Co.*,
  2005 WL 678855 (D. Del. Mar. 24, 2005) ...............................................................................7, 8

*In re TMI Litig.*,
  193 F.3d 613 (3d Cir. 1999) ........................................................................................................7

*Tracinda Corp. v. DaimlerChrysler AG*,
  2001 WL 849736 (D. Del. July 26, 2001) .................................................................................10

*Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.*,
  775 F. Supp. 759 (D. Del. 1991) .............................................................................................8, 9

**Statutes**

11 *Del. C.* §§ 1441, 1468-1469A ................................................................................................2, 8

11 *Del. C.* §§ 1464-1467 ........................................................................................................ passim

**Other Authorities**

Fed. R. Civ. P. 42(a) .....................................................................................................................1, 7

D. Del. LR 7.1.1 ................................................................................................................................1

# **INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 42(a), Defendants Delaware Department of Safety and Homeland Security, Nathaniel McQueen, Jr., Melissa Zebley, and Kathy Jennings ("Defendants"), through their undersigned counsel, respectfully move this Court to consolidate *Delaware State Sportsmen's Association, Inc. et al v. Delaware Department of Safety and Homeland Security et al.*, C.A. No. 1:22-cv-00951-RGA (the "DSSA Case"), and the separately filed *Gabriel Gray et al. v. Kathy Jennings*, C.A. No. 1:22-cv-01500-MN (the "Gray Case"). The two cases, which both challenge the constitutionality of the same statute, involve overlapping claims that arise from a common core of facts. Defendants move for consolidation of the two cases for purposes of judicial economy and the efficient use of judicial resources. No party will be prejudiced by consolidation. The two cases are in the pre-discovery phase of litigation, and no case scheduling orders have been entered, so no undue delay will result from consolidating the actions. Consolidation is appropriate to prevent identical claims from being litigated in two separate proceedings, and there is no reasonable basis for the cases to proceed on dual tracks.

Pursuant to Local Rule 7.1.1, counsel for the parties have conferred. Counsel for the DSSA plaintiffs have advised that the DSSA plaintiffs agree with consolidation and will be filing a joinder to this motion. Counsel for the Gray plaintiffs, however, have advised that the Gray plaintiffs do not agree to consolidation.

## NATURE AND STAGE OF THE PROCEEDINGS

On June 30, 2022, Delaware enacted a package of gun safety bills. Included in this package were statutes regulating assault weapons, 11 *Del. C.* §§ 1464-1467 ("HB 450"), and large capacity magazines 11 *Del. C.* §§ 1441, 1468-1469A ("SS 1 for SB 6," and collectively with HB 450, the "Statutes"). The DSSA and Gray Cases challenge HB 450 as unconstitutional. The DSSA Case also challenges SS 1 for SB 6.

### A. The DSSA Case

On July 20, 2022, plaintiffs in the DSSA Case filed their Complaint challenging Delaware's newly enacted Statues. DSSA Case, D.I. 1. On September 9, 2022, the DSSA Case plaintiffs filed an Amended Complaint for Declaratory and Injunctive Relief, which added claims challenging SS 1 for SB 6. *Id.*, D.I. 5. On November 9, 2022, the DSSA Case defendants moved for partial dismissal of the Amended Complaint. *Id.*, D.I. 8-9. On November 15, the DSAA Case plaintiffs moved for a preliminary injunction barring the enforcement of HB 450 and SS 1 for SB 6. *Id.*, D.I. 10-11. On November 22, 2022, the DSSA Case parties filed a Joint Stipulation on Briefing Schedules to stay briefing on the Motion to Dismiss and Motion for Preliminary Injunction while the parties discussed a proposed joint scheduling order. *Id.*, D.I. 12. The Court granted the Joint Stipulation on Briefing Schedules. *Id.*, D.I. 13. No discovery has occurred to date.

### B. The Gray Case

On November 16, 2022, four-and-a-half months after the enactment of the Statutes, the Gray Case plaintiffs filed a Complaint challenging HB 450. Gray Case, D.I. 1. On November 22, 2022, the Gray Case plaintiffs moved for a Preliminary and Permanent Injunction barring the enforcement of HB 450. *Id.*, D.I. 4-5. A responsive pleading has not yet been filed. No discovery has occurred to date.

**STATEMENT OF FACTS**

This Court's docket currently has two cases filed in the aftermath of the passage of the Statutes. Both cases include a challenge to the constitutionality, under the federal constitution, of the assault weapons ban. Both cases claim the enforcement of HB 450 "make[s] it criminal for law-abiding citizens to exercise their fundamental right to keep and bear [assault weapons]." Gray Case, D.I. 1. ¶ 3; DSSA Case, D.I. 5 ¶ 4. Both cases seek similar relief against some overlapping defendants who are allegedly "responsible for enforcing and implementing Delaware's laws and regulations," DSSA Case, D.I. 5 at 2, and are allegedly "wholly or partially responsible for overseeing, implementing, and enforcing [HB 450], regulatory programs, and related policies, practices, and customs designed to propagate the same." Gray Case, D.I. 1 ¶¶ 22. And both cases seek to invalidate HB 450, including by requesting preliminary injunctions to prevent Delaware officials from "implementing or enforcing House Bill 450." DSSA Case, D.I. 10; *see also* Gray Case, D.I. 4-5 (seeking preliminary and permanent injunction to prevent the enforcement of HB 450).

Unsurprisingly, the pleadings bear striking similarities. The Gray Complaint makes substantially similar allegations to those in the DSSA Complaint. Indeed, the Gray Complaint repeatedly uses similar—and sometimes even identical—language to that contained in the DSSA Complaint. For example:

| DSSA COMPLAINT, D.I. 5 | GRAY COMPLAINT, D.I. 1 |
|---|---|
| ¶ 53 *Central among the common uses of "assault weapons" banned in Delaware is defense of self in the home. For example, most AR-style firearms are chambered for 5.56x45mm NATO (similar to .223 Remington) ammunition, a relatively inexpensive and* | ¶ 47 Unlike these "weapons of war," *central among the common uses of firearms banned in Delaware is defense of self in the home. For example, most AR-style firearms are chambered for 5.56x45mm NATO (similar to .223 Remington) ammunition, a relatively* |

3

| **DSSA COMPLAINT, D.I. 5** | **GRAY COMPLAINT, D.I. 1** |
|---|---|
| *highly common cartridge that is particularly well suited for home-defense purposes because it has sufficient stopping power in the event a home intruder is encountered, but loses velocity relatively quickly after passing through a target and other objects, thus decreasing the chance that an errant shot will strike an unintended target.* Although most pistol rounds have less muzzle velocity than a 5.56x45mm NATO round, they have greater mass, maintain velocity after passing through walls and other objects, and pose substantially greater risk to unintended targets in the home. An AR-15 rifle chambered for 5.56x45mm NATO ammunition is an optimal firearm to rely on in a self-defense encounter. | *inexpensive and very common cartridge that is particularly well suited for home-defense purposes because it has sufficient stopping power in the event a home intruder is encountered but loses velocity relatively quickly after passing through a target and other objects, thus decreasing the chance that an errant shot will strike an unintended target.* |
| ¶ 55<br><br>*Like the AR-15 generally, the specific features of banned so-called "copycat weapons" aid home defense. A flash suppressor, for example, not only reduces the chance that a home-invader will mark his victim's position; it also protects a homeowner against momentary blindness when firing in self-defense. David B. Kopel, Rational Basis Analysis of "Assault Weapon" Prohibition, 20 J. Contemp. L. 381, 397 (1994). Similarly, folding stocks, whether on rifles or shotguns, support maneuverability in tight home spaces, Kopel at 398-99, as well as safe storage of defense instruments.* | ¶ 50<br><br>*Like the AR-15 generally, the specific features banned by Delaware aid home defense. A flash suppressor, for example, not only reduces the chances that a home invader will mark his victim's position; it also protects a homeowner against momentary blindness when firing in self-defense. David B. Kopel, Rational Basis Analysis of "Assault Weapon" Prohibition, 20 J. Contemp. L. 381, 397 (1994). Similarly, folding and telescoping stocks increase maneuverability in tight home quarters, id. at 398–99, as well as enabling safe storage of defense instruments in accessible spaces.* A telescoping stock also allows a firearm to be better fitted to an individual shooter, thereby enhancing the ability of an individual to use the firearm safely and effectively. |

4

| **DSSA COMPLAINT, D.I. 5** | **GRAY COMPLAINT, D.I. 1** |
|---|---|
| ¶ 56<br><br>*Encounters with criminal intruders in the home are not uncommon. For instance, according to a report by the U.S. Department of Justice, Bureau of Justice Statistics, household members are present for almost a third of all burglaries and become victims of violent crimes in more than a quarter of those cases. Studies on the frequency of defensive gun uses in the United States have determined that there are up to 2.5 million instances each year in which civilians use firearms to defend themselves or their property.* | ¶ 53<br><br>*Encounters with criminal intruders in the home are not uncommon. For instance, according to a report by the U.S. Department of Justice, Bureau of Justice Statistics, household members are present for almost a third of all burglaries and become victims of violent crimes in more than a quarter of those cases. Studies on the frequency of defensive gun uses in the United States have determined that there are up to 2.5 million instances each year in which civilians use firearms to defend themselves or their property.* Gary Kleck, Marc Gertz, *Armed Resistance to Crime: The Prevalence and Nature of Self-Defense with a Gun*, 86 J. OF CRIM. L. & CRIMINOLOGY 150, 164 (1995); *see also* English, *National Firearms Survey*, *supra* at 9 (finding 31.1% of firearms owners, or approximately 25.3 million adult Americans, have used a firearm in self-defense and there are 1.67 million defensive firearm uses a year). |
| ¶ 57<br><br>*Other common, lawful uses of the "assault weapons" are for hunting and for sporting purposes. At least a third of all gun-owners own a firearm for hunting or sport shooting, and recreational target shooting has been cited as the top reason, albeit closely followed by home defense,* for owning a modern sporting rifle. | ¶ 54<br><br>*Other common, lawful uses of the banned firearms are hunting and sport. At least a third of all gun owners own a firearm for hunting or sport shooting, and recreational target shooting has been cited as the top reason, albeit closely followed by home defense,* for owning semiautomatic firearms like those banned by Delaware. |
| ¶ 58<br><br>*Here again, the banned features of "copycat weapons" serve lawful purposes. Folding stocks, for example, allow for safe transportation* and easier carrying over long distances while hunting. **Flash suppressors** | ¶ 55<br><br>*Here again, the banned features of firearms mischaracterized as "assault weapons" serve lawful purposes. Folding and telescoping stocks, for example, allow for safe transportation,* including in a hiking pack, an ATV, or a boat. These stocks also ease |

5

| **DSSA COMPLAINT, D.I. 5** | **GRAY COMPLAINT, D.I. 1** |
|---|---|
| *promote accuracy in target-shooting and hunting (especially at dawn.)* | carrying over long distances while hunting. Both telescoping stocks and protruding grips open hunting and sport shooting to those for whom recoil represents a high barrier to entry. Detachable magazines have the same benefits in hunting and sport shooting as they do in home defense—improved reloading and remedying of malfunctions. *Additionally, flash suppressors promote accuracy in target shooting and hunting (especially at dawn), as well as mitigate against temporary blindness when using a firearm in self-defense.* |
| ¶ 59<br><br>*By contrast, one use that is not common for "assault rifles" is crime. These arms "are used in a small fraction of gun crimes." See Gary Kleck, Targeting Guns: Firearms and Their Control 112 (1997) (evidence indicates that "well under 1% of [crime guns] are 'assault rifles.'")* | ¶ 56<br><br>*By contrast, one use that is not common for so-called "assault weapons" is crime. According to a widely cited 2004 study, these arms "are used in a small fraction of gun crimes." This has long been true. See Gary Kleck, Targeting Guns: Firearms and Their Control 112 (1997) (evidence indicates that "well under 1% [of crime guns] are 'assault rifles.'").* Indeed, according to FBI statistics, in 2019 there were only 364 homicides known to be committed with rifles of any type, compared to 6,368 with handguns, 1,476 with knives or other cutting instruments, 600 with personal weapons (hands, feet, etc.) and 397 with blunt objects. *See* Expanded Homicide Table 8, Crime in the United States (FBI 2019), https://bit.ly/3HdolNd. |

The DSSA and Gray Cases are at a similar, pre-discovery stage in litigation. Although the DSSA Complaint was filed in July 2022, the motions for preliminary injunctions were filed within one week of each other, in November. No discovery has occurred in either case. And no responsive pleading has been filed in either case.

6

**ARGUMENT**

**I.     THE DSSA AND GRAY CASES SHOULD BE CONSOLIDATED.**

Under Rule 42(a), this Court has "the authority to consolidate actions involving a common question of law or fact." *Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, 2007 WL 2892707, at *3 (D. Del. Sept. 30, 2007). In exercising this discretion, the Court balances "the risk of prejudice and confusion wrought by consolidation against the risk of inconsistent rulings on common factual and legal questions, the burden on the parties and the court, the length of time, and the relative expense of proceeding with separate lawsuits if they are not consolidated." *Myers v. New Castle Cnty.*, 2013 WL 3853181, at *1 (D. Del. July 24, 2013) (quoting *Nat'l Ass'n of Mortg. Brokers v. Bd. of Governors of Fed. Reserve Sys.*, 770 F. Supp. 2d 283, 286 (D.D.C. 2011)). "The purpose of consolidation is 'to streamline and economize pretrial proceedings so as to avoid duplication of effort, and to prevent conflicting outcomes in cases involving similar legal and factual issues.'" *In re TMI Litig.*, 193 F.3d 613, 724 (3d Cir. 1999) (internal citation omitted). Consolidation is appropriate where, as here, it is unlikely to cause undue delay or confusion, and where it will promote judicial economy by preventing inconsistent rulings and duplication of efforts. *Myers*, 2013 WL 3853181, at *2.

"[M]inimal factual and legal overlap" is required for consolidation. *Syngenta Seeds, Inc. v. Monsanto Co.*, 2005 WL 678855, at *3 (D. Del. Mar. 24, 2005). Delaware courts consolidate matters where consolidation "will be more efficient than managing the cases separately," *id.*; "expense or fairness issues . . . marshal against consolidat[ion]." *Leonard v. Stemtech Int'l, Inc.*, 2012 WL 3655512, at *11-12 (D. Del. Aug. 24, 2012) (concluding consolidation of cases would not "generate undue inconvenience, delay, expense or the risk of inconsistent results"). In determining whether there is sufficient overlap to warrant consolidation, Delaware courts consider whether the "two cases assert the same basic causes of action," *id.*, and implicate "the same

7

witnesses, documents and exhibits." *Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.*, 775 F. Supp. 759, 761 (D. Del. 1991)). The Gray and DSSA Cases meet this standard, and consolidation is warranted here.

*First,* the plaintiffs in the DSSA and Gray Cases both seek to overturn HB 450. Specifically, plaintiffs in both actions claim that HB 450 violates the Second and Fourteenth Amendments of the United States Constitution. DSSA Case, D.I. 5, ¶¶ 134-144, 159-209; Gray Case, D.I. 1, ¶¶ 115-128. The plaintiffs in both actions also contend that HB 450 does not comport with the United States Supreme Court's recent decision in *New York State Rifle and Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022). DSSA Case, D.I. 5 ¶¶ 9-18; Gray Case D.I. 1 ¶¶ 6-10. As a result, analysis of the claims in the two cases will overlap as to questions of United States constitutional law, including the application of *Bruen*. Undertaking this same analysis in two separate cases would unnecessarily burden the Court and the parties, and creates the risk of inconsistent rulings.

While the DSSA Case attacks HB 450 on additional grounds beyond those asserted in the Gray Case, and also challenges an additional statute governing large capacity magazines, the fact that the DSSA Case is broader than the Gray Case does not affect the propriety of consolidation. And although the complaint in the DSSA Case includes more claims, including claims challenging SS 1 for SB 6, "[c]ases need not share complete identity of law or facts for consolidation to be appropriate." *Leonard*, 2012 WL 3655512, at *11; *Myers*, 2013 WL 3853181, at *2 (finding common issues of law and fact even though claims were not identical and ordering consolidation to promote judicial economy and eliminate needless repetition); *Syngenta*, 2005 WL 678855, at *3 (ordering consolidation of two cases despite a number of factual and legal differences between

them because they presented "minimal factual and legal overlap" and consolidation would be more efficient).

*Second,* the defendants are related parties. Although the various parties in the respective actions are not identical, the defendants in both cases are Delaware state officials alleged to be responsible for the enforcement and implementation of HB 450. Further, the Delaware Attorney General, though not named as a defendant in the DSSA Case, represents the defendants as counsel in that action. As a result, the "significant interrelationship among the defendants," weighs in favor of consolidation. *Eastman Chem. Co. v. AlphaPet Inc.*, 2011 WL 7121180, at *4 (D. Del. Dec. 29, 2011).

*Third,* consolidation will be judicially efficient and economical given overlapping discovery. *Waste Distillation Tech., Inc.*, 775 F. Supp. at 761 (granting motion to consolidate where "[c]onsolidation will encourage orderly pretrial discovery, save witness time and expense, [and] avoid duplicitous filings"). In light of the common issues presented by these cases, it is likely that the same or similar witnesses will be called, and that the parties will seek the same documents to prosecute and defend the HB 450 claims. *See Leonard,* 2012 WL 3655512, at *12 ("because the allegations are made against the same defendant [] and implicate some of the same legal issues and fact patterns [], it is a reasonable assumption that there may be some overlap of witnesses or documentary evidence between the cases."). Given the emphasis placed on the specific features and asserted uses of assault weapons in the respective complaints, *see* DSSA Case, D.I. 5 ¶¶ 46-58; Gray Case, D.I. 1 ¶¶ 43-59, there are likely to be a number of third-party subpoenas and depositions concerning the assault weapons at issue. Moreover, expert witnesses will offer testimony on the same issues in both cases, including regarding the history of relevant

weapons and their regulation. There is thus no question that consolidation will permit the efficient litigation of both cases.

*Finally,* consolidating the cases will not result in prejudice, undue delay, or confusion. Both cases are in the pre-discovery phase, and schedules for briefing on the Motion to Dismiss, the respective motions for preliminary injunction(s), and trial have not been finalized. Consolidation will thus not delay the respective plaintiffs' ability to prosecute their claims. In addition, the parties in both actions would not be prejudiced by consolidation because it would not affect their choice of counsel or alter their rights in litigating their respective claims. *See Tracinda Corp. v. DaimlerChrysler AG*, 2001 WL 849736, at *2-3 (D. Del. July 26, 2001) (finding no showing of prejudice from consolidation where the plaintiffs "will still be able to pursue any individual claims they have and will still be able to maintain their respective attorneys").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court consolidate the above-captioned actions.

| ROSS ARONSTAM & MORITZ LLP | STATE OF DELAWARE DEPARTMENT OF JUSTICE |
|---|---|
| */s/ David E. Ross* | */s/ Caneel Radinson-Blasucci* |
| David E. Ross (#5228) | Kenneth L. Wan (#5667) |
| Bradley R. Aronstam (#5129) | Caneel Radinson-Blasucci (#6574) |
| Garrett B. Moritz (#5646) | Deputy Attorneys General |
| 1313 North Market Street, Suite 1001 | Carvel State Office Building |
| Wilmington, DE 19801 | 820 N. French Street, 6th Floor |
| (302) 576-1600 | Wilmington, DE 19801 |
| dross@ramllp.com | (302) 577-8400 |
| baronstam@ramllp.com | kenneth.wan@delaware.gov |
| gmoritz@ramllp.com | caneel.radinson-blasucci@delaware.gov |

*Attorneys for Defendants*

Dated: December 4, 2022