# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GABRIEL GRAY; WILLIAM TAYLOR; DJJAMS LLC; FIREARMS POLICY COALITION, INC., and SECOND AMENDMENT FOUNDATION,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>KATHY JENNINGS, Attorney General of Delaware,<br>　　　　Defendant. | C.A. No. 1:22-cv-01500-MN |

## PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO CONSOLIDATE

Bradley P. Lehman (No. 5921)
**GELLERT SCALI BUSENKELL & BROWN LLC**
1201 N. Orange Street, Suite 300
Wilmington, DE 19801
P: (302) 425-5800
E: blehman@gsbblaw.com

## **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

NATURE AND STAGE OF THE PROCEEDINGS ................................................................ 2

STATEMENT OF FACTS ........................................................................................................ 3

ARGUMENT ............................................................................................................................. 4

    I.    THIS CASE SHOULD NOT BE CONSOLIDATED WITH THE DSSA CASE. ............... 4

        A.    Overlapping Discovery is Not a Concern in These Cases ........................................... 4

        B.    Consolidation of This Case With the DSSA Case Will Prejudice the Plaintiffs .......... 7

CONCLUSION .......................................................................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*,
710 F.3d 99 (3d Cir. 2013)..................................................................................................7

*Eastman Chem. Co. v. AlphaPet Inc.*,
2011 U.S. Dist. LEXIS 152907 (D. Del. Dec. 29, 2011)....................................................4

*Ezell v. City of Chicago*,
651 F.3d 684 (7th Cir. 2011) ..............................................................................................7

*Moore v. Madigan*,
702 F.3d 933 (7th Cir. 2012) ..............................................................................................5

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
142 S. Ct. 2111 (2022)................................................................................................5, 6, 7

**Constitutions, Statutes, and Rules**

11 Del. C. § 1465 ..........................................................................................................................3

11 Del. C. § 1466(a).......................................................................................................................3

11 Del. C. § 4205(b)(4)..................................................................................................................3

18 U.S.C. § 922(g)(1) ....................................................................................................................3

Fed. R. Civ. P. 42(a) ...................................................................................................................4, 7

**Other Authorities**

WILLIAM ENGLISH, 2021 *National Firearms Survey: Updated Analysis Including
Types of Firearms Owned* (May 13, 2022), https://bit.ly/3yPfoHw..........................................5

# INTRODUCTION

The Defendant's motion to consolidate this case with the "DSSA Case" (C.A. No. 1:22-cv-01500-RGA) is based upon the flawed premises that "overlapping discovery" would otherwise result in the two cases and that no party will be prejudiced by consolidation. While there is naturally some factual overlap in the pleadings to date in cases challenging the same statute (in addition to additional challenges in the DSSA Case), consolidation is not appropriate here and would be prejudicial to the Plaintiffs in this case. No discovery is necessary or warranted in this case, and the Plaintiffs in this case are currently being and will continue to be prejudiced by delays and expense associated with the broader scope of the DSSA Case. The Court should deny Defendant's motion to consolidate this case with the DSSA Case and permit this case to proceed expeditiously, particularly in light of the pending request for preliminary injunctive relief to enjoin enforcement of an unconstitutional law which violates the Second and Fourteenth Amendment rights of Delaware citizens.

## NATURE AND STAGE OF THE PROCEEDINGS

On June 30, 2022, Delaware Governor John Carney signed into law House Bill 450 ("HB 450"). HB 450 radically expanded the State of Delaware's statutes to ban the constitutionally protected conduct of possessing, purchasing, transporting, importing, selling, transferring, self-manufacturing, receiving, and lawfully using constitutionally protected arms in common use for lawful purposes – labeled "assault weapons" by the State. HB 450 makes it criminal in the State of Delaware for law-abiding citizens to exercise their fundamental right to keep and bear such arms.

Plaintiffs herein, Gabriel Gray, William Taylor, DJJAMS LLC, Firearms Policy Coalition, Inc., and Second Amendment Foundation, filed suit on November 16, 2022 (*see* D.I. 1), and the Plaintiffs moved for preliminary injunctive relief on November 22, 2022 (*see* D.I. 4 and 5). To date, despite the passage of the deadlines for doing so set forth in this Court's rules, Defendant has neither answered the complaint nor responded to Plaintiffs' motion for a preliminary injunction, effectively giving herself indefinite extensions of time as a result of the motion to consolidate this case with the DSSA case.[1]

On December 4, 2022, Defendant filed her motion to consolidate (D.I. 6) and opening brief in support thereof (D.I. 7). The following day, on December 5, the parties to this case and the DSSA case submitted a joint letter to the Court in each case explaining their differences of opinion concerning case scheduling and consolidation (D.I. 8). Pursuant to an order entered on December

---

[1] Undersigned counsel expressed willingness to grant a courtesy extension of time for filing an answering brief in light of the holiday season, but Defendant then moved to consolidate and submitted a scheduling order (*see* D.I. 8, Ex. C) that contemplates responding to Plaintiffs' motion for a preliminary injunction in mid-February 2023, nearly three months after it was filed, leaving HB 450 to continue violating the fundamental constitutional rights of Delawareans in the interim.

2

12, 2022 (D.I. 9), a hearing on the motion to consolidate is scheduled for December 20, 2022, at 11:00 a.m.

## STATEMENT OF FACTS

The complaint in this case is 29 pages long and contains a single count which requests that the Court find that HB 450 unconstitutionally bans so-called "assault weapons" and enter preliminary and permanent injunctions preventing enforcement of the unconstitutional ban. In HB 450, Delaware added definitions at 11 Del. C. § 1465 "for purposes of this section and § 1466 and § 1467" which set forth the various terms relating to the State's Ban on so-called "assault weapons." Under 11 Del. C. § 1466(a), unless exempt from the law under provisions not applicable in this case, "it is unlawful for a person to" "[t]ransport an assault weapon into this State" or to "[m]anufacture, sell, offer to sell, transfer, purchase, receive, or possess an assault weapon." A person is guilty of a class D felony when that person transports or imports an "assault weapon" into Delaware, 11 Del. C. § 1466(a)(1), or manufactures, sells, offers to sell, transfers, purchases, receives, or possesses an assault weapon, 11 Del. C. § 1466(a)(2). A Class D felony is punishable by up to 8 years in prison (11 Del. C. § 4205(b)(4)). A conviction would result in the lifetime disqualification of an individual's right to own and possess firearms and ammunition. *See* 18 U.S.C. § 922(g)(1).

In stark contrast, the complaint in the DSSA Case is 99 pages long, contains 14 counts, and challenges other statutes concerning "large-capacity magazines" while asserting claims under, *inter alia*, the Commerce Clause, the Takings Clause, and 18 U.S.C. § 926A. Notably, of the 99 pages and 320 paragraphs in the operative DSSA complaint, Defendant was able to identify only six paragraphs where similar language was used in the complaint in this case (approximately 1.8% of the allegations). While the plaintiffs in each of these two cases were and are free to adopt the litigation strategies they deem most appropriate, the Plaintiffs in this case made the strategic

3

decision to focus entirely on HB 450's ban on "assault weapons" in order to streamline the case and achieve as prompt a resolution as possible. Consolidating this case with the DSSA Case will unquestionably frustrate that aim.

## ARGUMENT

**I. THIS CASE SHOULD NOT BE CONSOLIDATED WITH THE DSSA CASE.**

Under Fed. R. Civ. P. 42(a), separate actions involving common questions of law or fact may, in the discretion of the Court, be consolidated. "The Court has broad authority to consolidate actions involving common questions of law or fact if, in its discretion, such consolidation would facilitate the administration of justice." *Eastman Chem. Co. v. AlphaPet Inc.*, 2011 U.S. Dist. LEXIS 152907, *8 (D. Del. Dec. 29, 2011) (internal quotations omitted). "Although the existence of common questions of law or fact is a prerequisite to consolidation, their presence does not require consolidation pursuant to Rule 42(a)." *Id*. (citing *Rohm & Haas Co. v. Mobil Oil Corp.,* 525 F. Supp. 1298, 1309 (D. Del. 1981)). "Instead, in considering such a motion, the Court must balance any savings of time and effort gained through consolidation against any inconvenience, delay, or expense that may result." *Id.* (internal quotations omitted). Here, these considerations counsel against consolidating this case with the DSSA Case.

**A. Overlapping Discovery is Not a Concern in These Cases**

Defendant argues in her opening brief that consolidation is appropriate because, *inter alia*, in each of the two cases "the same or similar witnesses will be called," "the parties will seek the same documents to prosecute and defend the HB 450 claims," "there are likely to be a number of third-party subpoenas and depositions concerning the assault weapons at issue," and "expert witnesses will offer testimony on the same issues in both cases, including regarding the history of relevant weapons and their regulation." These concerns are all without substance in this case.

4

Defendants' position is premised upon a fundamental misunderstanding of how cases like these are to proceed, particularly in light of the U.S. Supreme Court's June 2022 ruling in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). The only "facts" relevant to resolution of the constitutional question involved here are "legislative facts" regarding the modern firearms that Defendants characterize as "assault firearms" and of historical firearm regulation in this country, and all such facts can accordingly be developed in briefing and through oral argument without the need for expert or other evidence adduced through traditional party discovery methods. *See Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012) (ordering entry of judgment for plaintiffs on review of order granting motion to dismiss because "[t]he constitutionality of the challenged statutory provisions does not present factual questions for determination in a trial…. Only adjudicative facts are determined in trials, and only legislative facts are relevant to the constitutionality of the Illinois gun law."). Reviewing the statutes that have been in effect in the U.S. over time to determine whether there is an historical tradition of analogous regulations is a task that is firmly within the province of judges and lawyers, and no fact or expert testimony is needed or appropriate. The "history of [the] relevant weapons" is wholly immaterial, as the fact that matters is whether they are in common use for lawful purposes *right now*. Notably, a recent survey of gun owners indicates that about 24.6 million Americans have owned up to 44 million AR-15s or similar rifles. *See* William English, 2021 *National Firearms Survey: Updated Analysis Including Types of Firearms Owned* at 1 (May 13, 2022), https://bit.ly/3yPfoHw.

Moreover, the U.S. Supreme Court's recent decision in *Bruen* provides further support for dispensing with discovery in this case. In *Bruen*, no factual development occurred in the district court because plaintiffs' claims were foreclosed by circuit precedent at the time the complaint was filed, and the district court accordingly entered judgment against the plaintiffs on the pleadings.

*See* 354 F. Supp. 3d 143 (N.D.N.Y. 2018). In holding that New York's may-issue licensing scheme violated the Second Amendment, the Supreme Court expressly rejected the argument that it could not "answer the question presented without giving respondents the opportunity to develop an evidentiary record," 142 S. Ct. at 2135 n.8, because "in light of the text of the Second Amendment, along with the Nation's history of firearm regulation," the conclusion "that a State may not prevent law-abiding citizens from publicly carrying handguns because they have not demonstrated a special need for self-defense" did not turn on disputed factual questions. *Id.* The same is true here where the Court must determine whether the text of the Second Amendment and the Nation's history of firearm regulation allow the State of Delaware to ban law-abiding citizens from acquiring, possessing, transporting, etc., a widely owned category of modern firearms that are unquestionably in common use for lawful purposes today.

Application of *Bruen*'s text and history test does not involve any analysis of adjudicative facts of the kind that are disclosed through discovery. *See id.* While Defendant apparently believes that expert discovery is necessary and appropriate in these cases, it is noteworthy that *Bruen* itself did not have expert witnesses. Indeed, the Supreme Court decided the case based on a motion-to-dismiss record in the district court (*i.e.*, based solely on the contents of the complaint). Likewise, this case turns entirely upon legal issues that can and should be fully resolved by this Court on evidence from the public and historical legislative record, if not now, then when presented by the parties in summary judgment briefing. Given the lack of any legitimate concern about overlapping discovery, consolidation of this case with the DSSA Case would serve no real purpose here, and the discovery that Defendant suggests will be necessary would be of no value except as a mechanism to delay resolution of this case.

### B. Consolidation of This Case With the DSSA Case Will Prejudice the Plaintiffs

As noted above, when faced with a motion to consolidate under Rule 42(a), the Court must balance any savings of time and effort gained through consolidation against any inconvenience, delay, or expense that may result. Here, these factors weigh against consolidation. The DSSA Case is much broader in scope than this case, and the Plaintiffs here stand to experience potentially significant delay and additional expense if they must wait for various procedural issues now present or which may arise in the DSSA Case to play out while paying their counsel to keep track of events unfolding in a second case. These effects are already being felt, as an answer to the Plaintiffs' complaint and a response to Plaintiffs' motion for a preliminary injunction are indefinitely on hold (owing to a unilateral determination made by Defendant) while Defendant's motion to consolidate is considered and, potentially, while a partial motion to dismiss the DSSA Case is briefed, argued, and decided. In the meantime, Plaintiffs have suffered and will continue to suffer irreparable harm. It is well accepted that the deprivation of a constitutional right constitutes irreparable harm. *See, e.g., K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 113 (3d Cir. 2013); *see also Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011) ("Infringements of this [Second Amendment] right cannot be compensated by damages."). Plaintiffs in this case are entitled to prompt consideration of their request for preliminary injunctive relief and, under the standard reiterated by *Bruen*, to a prompt resolution of this case without unneeded, time-wasting discovery or delays associated with unwarranted consolidation.

Moreover, while expert witnesses and discovery are not needed or appropriate to address the Second Amendment claims in this case under *Bruen*, a number of the non-Second Amendment claims in the DSSA Case will turn on legal analysis that may involve significant discovery and factual determinations. Plaintiffs should not be forced to delay resolution of the narrow

constitutional issue presented by the complaint in this case while numerous other issues are resolved in the DSSA Case. Notably, in a consolidated action, the Plaintiffs here may be prejudiced through denial of the opportunity to promptly appeal any adverse judgment on their Second Amendment claim while other claims from the DSSA Case remain pending.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court enter an order denying Defendant's motion to consolidate this case with the DSSA Case and directing them to promptly answer Plaintiffs' complaint and respond to Plaintiffs' motion for preliminary and permanent injunctive relief.

Respectfully submitted,

Dated: December 16, 2022         **GELLERT SCALI BUSENKELL & BROWN LLC**

*/s/ Bradley P. Lehman*
Bradley P. Lehman (No. 5921)
1201 N. Orange Street, Suite 300
Wilmington, DE 19801
P: (302) 425-5800
E: blehman@gsbblaw.com

*Attorney for Plaintiffs*